IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHNSON REGIONAL MEDICAL CENTER                                   PLAINTIFF

VS.                            NO. 2:14-cv-02174-PKH

DR. ROBERT HALTERMAN                                              DEFENDANT

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION.

Plaintiff, Johnson Regional Medical Center ("Plaintiff"), seeks erroneously in its complaint to recover on two contracts, the Physician Recruitment Agreement and Physician Employment Agreement, which are attached to Exhibit 1 to the Motion for Summary Judgment as Exhibits A and B and incorporated herein (sometimes collectively, "Agreements").  Plaintiff contends that Defendant, Dr. Robert Halterman ("Defendant"), breached these Agreements when he resigned in December 2013.  Yet, it is undisputed that Defendant was seriously injured when he accidentally slipped in a stairwell in Plaintiff's facilities.  His injury prevented him from performing many of the surgical duties that Plaintiff had originally hired him to do.  His injury is the reason for his resignation.  As such, his performance under the Agreements is excused.  Summary judgment is proper.

### II. STATEMENT OF UNDISPUTED FACTS.

In 1988, Defendant received a degree in Doctor of Osteopathy from the University of Health Sciences, College of Osteopathic Medicine, in Kansas City, now known as the Kansas

1

City University of Medicine and Biosciences.  See Affidavit of Dr. Robert Halterman, which is attached to the Motion for Summary Judgment as Exhibit 1 and incorporated herein by reference.  For approximately 27 years, Defendant's medical practice has been in obstetrics and gynecology, or OB/GYN.  See Ex. 1.

After signing the Agreements on or about March 20, 2013, Defendant began working for Plaintiff in July 2013 as a full time OB/GYN.  See Ex. 1.  On November 6, 2013, Defendant accidentally slipped on some liquid in the stairwell next to his office at Plaintiff's facilities.  See Ex. 1.  As a result of this slip in the stairwell, Defendant injured his shoulder and was thereafter unable to perform many of the types of medicine he had been hired to do by Plaintiff.  See Ex. 1.

Defendant did not expect at the time to be able to return to full-time practice for at least 6 months, and it was possible he might never return to full-time practice.  See Ex. 1.  His injury reduced him to working in a position where major pelvic and laparoscopic surgeries, and the difficult vaginal and C-section deliveries, were not possible, due to the shear physical force he sometimes needed to complete these procedures.  See. Ex. 1.

For these reasons, on December 23, 2013, Defendant submitted his letter of resignation to Plaintiff.  A copy of that letter is attached to Exhibit 1 as Exhibit C.  To this day, Defendant's shoulder injury has not fully recovered and is still painful, and Defendant remains unable to perform many of the types of medicine that he used to do and for which Plaintiff hired him.  See Ex. 1.

Plaintiff advanced $50,000.00 (the "Advance") to Defendant after he signed the Physician Recruitment Agreement, and he used that money for relocation and transitioning to live in Clarksville, Arkansas.  See Ex. 1.  Between March 2013, when Defendant signed the

agreements, and July 2013, when he began working for Plaintiff, he did not have another job and used some of the Advance for living expenses. The Advance has been spent. See Ex. 1.

At the time that Defendant was working for Plaintiff, Larry Morse was the Administrator of the hospital. See Deposition Transcript of Larry Morse, which is attached to the Motion for Summary Judgment as Exhibit 2, at p.8, lines 6-11. Mr. Morse was Defendant's boss. Ex. 2, p.9, lines 13-20. Mr. Morris acknowledges that Defendant did not fake his injury, and Mr. Morse does not dispute it was an accident. Ex. 2, p.15, lines 22-24, p.16, lines 13-15. Mr. Morse contends that Defendant breached the Agreements because he resigned from the medical staff and was unable to work full-time. Ex. 2, p.72, lines 21-25, p.73, lines 1-25, p.74, lines 1-2, p.82, lines 1-2. Defendant was in compliance with the Agreements through the end of December 2013. Ex. 2, p.116, lines 5-9. Plaintiff does not contend that Defendant improperly used the Advance. See Exhibit 2, at p.74, lines 11-25, p.75, lines 1-25, p.76, lines 1-2.

### III. ARGUMENT.

#### A. Standard of Review.

"In a diversity case such as this one, *see* 28 U.S.C. § 1332, we employ state substantive law." *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 852 (8th Cir. 2013), *as corrected* (Sept. 9, 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2015).

Here, applying Arkansas substantive law, there are no genuine disputes as to any material facts. Defendant was legitimately and accidentally injured in such a manner that he was unable to do his duties for Plaintiff as an OB/GYN. As such, his continued performance of the contractual obligations was excused. Summary judgment is proper.

3

## B. Defendant's Contractual Obligations Are Excused by His Injury.

Defendant's obligations under the Agreements are excused by his injury. "Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and capable of performing the contract, so that death or disability, including sickness, will operate as a discharge, termination of the contract, or excuse for nonperformance." *Joshua v. McBride*, 19 Ark. App. 31, 35, 716 S.W.2d 215, 217-18 (1986), quoting 17A C.J.S. *Contracts* § 465, at 623 (1963).

"The law of impossibility has evolved into a broader and more equitable rule of impracticability." *Smith v. Decatur Sch. Dist.*, 2011 Ark. App. 126, 4 (2011), citing *Miller v. Mills Constr., Inc.,* 352 F.3d 1166 (8th Cir.2003) and 5 WILLISTON ON CONTRACTS § 77.1 (4th ed. 2004). "Impracticability of performance may excuse a party from performing contractual obligations." *Smith v. Decatur Sch. Dist.*, 2011 Ark. App. 126, 5 (2011), citing RESTATEMENT (SECOND) OF CONTRACTS § 261.

"Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981). "Performance may be impracticable because extreme and unreasonable difficulty, expense, *injury*, or loss to one of the parties will be involved." RESTATEMENT (SECOND) OF CONTRACTS § 261, *comment d* (emphasis added)

"If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the non-occurrence of which was a basic assumption on which the contract was made." RESTATEMENT (SECOND) OF

CONTRACTS § 262. "If, as both parties understand, the existence of a particular person is necessary for the performance of a duty, it is a 'basic assumption on which the contract was made' that he will neither die nor be deprived of the necessary capacity before the time for performance. Therefore, the death of that person or his loss of capacity discharges the obligor's duty to render the performance[.]"  RESTATEMENT (SECOND) OF CONTRACTS § 262, *comment a*.

The following is an illustration from the Restatement:

> A contracts with B to produce a play starring C, a famous actor, in B's theater on December 16. Early in December, while the play is being performed elsewhere, C experiences a worsening throat condition and, although it does not prevent his performing, he is advised by his doctor to cancel his further performances and have a minor operation. On December 12, A notifies B that the December 16 performance of the play is cancelled for this reason. A's duty to produce the play is discharged, and A is not liable to B for breach of contract.

RESTATEMENT (SECOND) OF CONTRACTS § 262, *illustration no. 5*.

The instant action is more compelling than this illustration. Plaintiff contends that the reason Defendant was considered in breach of the Agreements is that Defendant resigned and was unable to work full-time. Defendant was injured on November 6, 2013. Defendant slipped on some liquid in the stairwell next to his office at Plaintiff's facilities. As a result of his slip in the stairwell, Defendant injured his shoulder and was thereafter unable to perform many of the types of medicine he had been hired to undertake at Plaintiff's facilities. This injury is a more compelling disability than the famous actor's sore throat.

The reason Defendant resigned is that he was injured and could not return to full-time practice for at least 6 months, and it was possible he might never return to full-time practice. His injury reduced Defendant to working in a position where major pelvic and laparoscopic

surgeries, and the difficult vaginal and C-section deliveries, were not possible, due to the shear physical force he sometimes needs to complete these procedures.

Defendant was not in breach of the Agreements through the end of December 2013. He submitted his letter of resignation on December 23, 2013. Plaintiff does not dispute that Defendant was legitimately injured and does not contend that he faked the injury. See Morse Depo. Defendant was injured and unable to perform the Agreements. His continued performance of the obligations thereunder was therefore excused. Summary judgment is proper.

It is anticipated that Plaintiff will argue incorrectly that for equitable reasons, Defendant should be required to repay the balance of the Advance, even if his performance of the Agreements is excused. This is essentially an argument for unjust enrichment, which Plaintiff did not assert in the Complaint. The argument, if made, should be rejected on this ground alone.

In addition, the forgiveness of the Advance is *tied directly* to Defendant's ability to perform the Agreements. The Physician Recruitment Agreement provides that "[u]pon each payment date of the Note, provided that Physician remain in full compliance with all his obligations hereunder, Hospital shall forgive the payment of principal and interest on such note due on that date." Ex. B to Ex. 1, Section 4.2. If his performance of the rest of the Agreements is excused, so is the repayment of the Advance.

Further, Defendant has not been *unjustly* enriched. The Advance was part of the package to persuade Defendant to relocate to a rural area, which Defendant did. Defendant did not have a job between the time he signed the Agreements in March and the time when he began working at Plaintiff's facilities in July. Mr. Morse expected Defendant to use the Advance for relocation and living expenses, which is how Defendant used the funds. The funds have been spent.

## IV. CONCLUSION.

For these reasons, Defendant respectfully requests the Court to grant his Motion for Summary Judgment, and for all other just and proper relief to which he is entitled.

        Respectfully submitted,

        NISWANGER LAW FIRM PLC
        Centre Place Building
        212 Center Street, 11th Floor
        Little Rock, AR 72201
        Phone (501) 353-1158
        iPhone (501) 773-3651
        Fax (501) 421-3651
        Email steve@niswangerlawfirm.com
        Website http://www.niswangerlawfirm.com

        By: _____
            Stephen B. Niswanger, #96012

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2015, a copy of the forgoing was filed with the CM/ECF system and sent by regular mail to:

Kyle Unser, Esq.
Max R. Deitchler, Esq.
Kutak Rock LLP
The Brewer Building
234 East Millsap Rd., Suite 200
Fayetteville, AR 72703-4099

        _____
        Stephen B. Niswanger